IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
DEC 0 2 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DAVID P. CARROLL,

Plaintiff,

v.

BUTTERFIELD HEALTH CARE, INC., doing business as MEADOWBROOK MANOR BOLINGBROOK; KIANOOSH JAFARI; FREEDMAN, ANSELMO, LINDBERG & RAPPE,

Defendants.

No. 02 C 4903
Judge Marovich
Magistrate Judge Bobrick

DOCKETED
DEC 0 3 2002

NOTICE OF FILING

TO: Sharon A. Doherty
SCHIFF, HARDIN & WAITE
6600 Sears Tower
Chicago, IL 60606-6473

Jeffrey T. Mitchell
KONICEK & DILLON, PC
112 N. First Ave., Suite 401
St. Charles, IL 60174

**PLEASE TAKE NOTICE** that on December 2, 2002, we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT I**, a copy of which being attached hereto and served upon you.

Michelle R. Teggelaar

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle R. Teggelaar
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

j:\case\meadow8.383\pleading\notfil20202.wpd



**CERTIFICATE OF SERVICE**

I, Michelle R. Teggelaar, hereby certify that on December 2, 2002, a copy of the above referenced document was served by United States Mail on the parties listed above.

Michelle R. Teggelaar

j:\case\meadow8.383\pleading\notfil20202.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
DEC 0 2 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DAVID P. CARROLL,

Plaintiff,

v.

BUTTERFIELD HEALTH CARE, INC., doing business as MEADOWBROOK MANOR BOLINGBROOK; KIANOOSH JAFARI; FREEDMAN, ANSELMO, LINDBERG & RAPPE,

Defendants.

No. 02 C 4903
Judge Marovich
Magistrate Judge Bobrick

DOCKETED
DEC 0 3 2002

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT I**

Defendant, Freedman, Anselmo, Lindberg & Rappe ("Freedman") has filed a motion to dismiss Count I of plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6). Freedman argues that plaintiff's class claim under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") because (i) Freedman could not have known that plaintiff and the members of the putative class were required to sign the personal guarantee as a condition of a relative's admission; and (ii) the Nursing Home Act is not an absolute ban on personal guarantees. Freedman's arguments are without merit, ignore the facts alleged by plaintiff, and further attempt to introduce facts beyond the four corners of the Amended Complaint. As discussed in full below, defendant's motion should be denied.

## I. FACTUAL BACKGROUND

Plaintiff David P. Carroll is an individual and the son-in-law of one James R.





McDonald. On or about December 9, 2000, James R. McDonald was admitted to Meadowbrook Manor Bolingbrook. ("Meadowbrook"). (Amended Complaint ["AC"] ¶¶ 3, 7).

Defendant Butterfield Health Care, Inc., doing business as Meadowbrook Manor Bolingbrook, is an Illinois corporation which operates a nursing home located at 431 W. Remington Blvd., Bolingbrook, Illinois. (AC ¶ 4)

Defendant Jafari is the principal executing officer of Butterfield Health Care, Inc., and the principal equity owner of several other corporations which operate nursing homes. The latter are (a) Butterfield Health Care II, Inc. d/b/a Meadowbrook Manor of Naperville, (b) Butterfield Health Care III, Inc. d/b/a Meadowbrook Manor of Geneva, (c) Butterfield Health Care IV, LLC, (d) Butterfield Health Care V d/b/a Riverwoods Assisted Living Community, and (e) Butterfield Health Care VI, LLC d/b/a The Arbors Supportive Living Facility. (AC ¶ 5).

Defendant Freedman, Anselmo, Lindberg & Rappe is a law firm organized as a partnership with offices at P.O. Box 3107, Naperville, Illinois, 60566. (AC ¶ 6).

At the time of Mr. McDonald's admission to Meadowbrook, plaintiff Carroll was informed that McDonald could not be admitted unless Carroll executed a "Personal Guarantee." The "Personal Guarantee" is on p. 12 of the contract between Meadowbrook Manor and McDonald, attached as Exhibit A hereto. Exhibit A is prepared on a standard printed form contract that has been used since 1994. (AC ¶ 8).

Under 42 U.S.C. §1396r(5)(A)(ii), a state must prohibit a nursing home facility receiving Medicare or Medicaid, from requiring a third party guarantee of payment to the facility as a condition of admission to, or continued stay in, the facilities. Section 1396r provides:

**(5) Admissions policy**

**(A) Admission**

> **With respect to admissions practices, a nursing facility must–**
>
> **. . .**
>
> **(ii) not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility; . . .**

(AC ¶ 10).

It was and is the policy and practice of Meadowbrook other nursing homes operated by defendant Jafari to require a third party guarantee of payment as a condition of admission to, or continued stay in, the facilities, despite being the recipient of federal funding in the form of Medicare or Medicaid. (AC ¶ 11).

Defendant Jafari authorized and approved of the practice of requiring a third party guarantee of payment as a condition of admission to, or continued stay in, the facilities. (AC ¶ 12).

Defendant Freedman filed suit on behalf of Meadowbrook and against Carroll on the "Personal Guarantee" on or about August 2, 2001. On Sept. 6, 2001, defendant Freedman obtained a judgment in favor of Meadowbrook and against plaintiff Carroll. Defendants Meadowbrook and Freedman garnished plaintiff's wages. (AC ¶¶ 14, 15).

On May 17, 2002, the judgment was vacated on plaintiff Carroll's motion, which argued, among other things that the "Personal Guarantee" pursuant to which the judgment was obtained was in violation of federal law. (Motion and Agreed Court Order attached as Exhibit B). Defendant Freedman, on behalf of defendant Meadowbrook Manor Bolingbrook, continued garnishing plaintiff's wages after the judgment was vacated. (AC ¶¶16, 17).

Defendant Freedman regularly files suit on behalf of defendant Meadowbrook and other nursing homes owned by defendant Jafari to enforce personal guarantees. A computer search of court records reveals more than 50 such cases in 1999-2002. (AC ¶ 18).

Defendant Freedman Anselmo Lindberg & Rappe were on notice that the "Personal Guarantees"that they sought to enforce against family members of persons admitted to Meadowbrook and other nursing homes owned by defendant Jafari were improper and in violation of federal law as early as 2000, as the same defenses raised by Mr. Carroll in his motion to vacate, Exhibit B, were raised in one or more earlier suits filed by defendant Freedman on behalf of Meadowbrook and Jafari's nursing homes. In those actions, defendant Freedman likewise agreed to have the judgments vacated, once these defenses were waived. (AC ¶ 19).

Notwithstanding this knowledge of the improper "Personal Guarantees," and Meadowbrook's receipt of federal funding obtained through these earlier proceedings, defendant Freedman continued to file suits to collect debts owed to Meadowbrook and Jafari from residents' family members pursuant to these instruments. (AC ¶ 20).

## II. MOTION TO DISMISS STANDARD

A complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002), the Supreme Court reemphasized the extremely liberal pleading standard of the Federal Rules of Civil Procedure, noting that a dismissal of claims is only appropriate in the rarest circumstances:

Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss

> a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' [citing Hishon v. King & Spalding 467 U.S. 69, 73 (1984)]. If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.

See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169 (1993). A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).[1] The question is not what facts have or have not been alleged, but whether a plaintiff can submit proof to support the claim:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Scheuer, 416 U.S. at 236. In Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002), Judge Posner reiterated the broad notice pleading standard of the federal rules:

> As the Supreme Court has recently reaffirmed [citing Swierkiewicz], and we have held time and again [citations omitted], there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions [ ] listed in Rule 9.

The Court must accept all well-pleaded allegations of the complaint as true, and any ambiguities or doubts concerning sufficiency of the claim must be resolved in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

The plaintiff, but not the defendant, is entitled to set forth what set of facts

[1] Overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

consistent with the allegations of the complaint would sustain a claim. Early v. Bankers Life & Cas. Co., 959 F.2d 75, 79 (7th Cir. 1992). See also Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992). "This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion . . . ." Cushing v. City of Chicago, 3 F.3d 1156, 1160 (7th Cir. 1993).

## II. FREEDMAN VIOLATED THE FDCPA

Relying upon the decisions in Jenkins v. Heintz, 124 F.3d 824 (7th Cir. 1997), Freedman claims that it cannot be held liable for the alleged violations of the FDCPA because a debt collector is "not required to make an independent investigation of validity of the underlying debt," and that it is instead "entitled to rely upon the documents and facts provided to them by their clients." (Freedman motion pp. 2-3).

The defendant clearly misstates the holding of Jenkins. This case does not involve merely the sending of a collection letter, where the debt collector can rely upon the amount of the debt provided by its client -- which in Jenkins was attested to under oath and consistent with the account history supplied by the client. Under the defendant's interpretation of this case, no attorney would be required to perform any investigation whatsoever prior to filing suit, if he relied upon information from a lay client as to the ability to proceed in a lawsuit. Furthermore, he would not be required to do anything even if he had actual knowledge from prior experience that his client had no right to sue This would clearly lead to a preposterous result.

Any cursory review by Freedman into Mr. McDonald's file prior to filing suit would have shown that the "personal guarantee" was a part of the standard-form admission contract signed by all entrants into the facility (AC ¶¶ 8, 9). Even a minimal inquiry by

Freedman from its client would have revealed that Meadowbrook receives federal Medicaid funding (as do approximately 90% of all nursing home facilities in the State of Illinois). Furthermore, plaintiff has also alleged that Freedman acted in a similar manner in previous years - by filing suit pursuant to a "personal guarantee," only to voluntarily dismiss the proceeding when the *same* defenses raised by plaintiff were asserted there. (AC ¶19, 20).

A communication from an attorney conveys that he or she has "assessed the validity of the debt . . ." Nielsen v. Dickerson, 307 F.3d 623, 635 (7th Cir. 2002). It "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and a candidate for action." Avila v. Rubin, 84 F.2d 222, 229 (7th Cir. 1996). "An attorney's signature implies the attorney has formed a professional judgment about the debtor's case." Boyd v. Wexler, 275 F.3d 642, 648 (7th Cir. 2001) (*quoting* Avila, 84 F.2d 229). Yet, defendant argues that it was permissible for it to proceed in a lawsuit against plaintiff knowing from prior litigation that it was not entitled to collect from plaintiff pursuant to the personal guarantee.

The crux of Jenkins was that the plaintiff could not establish, in opposition to a motion for *summary judgment*, that the defendant (an attorney debt collector) knew that the amount of the debt attributable to force-placed insurance was unauthorized. Here, in plaintiff's complaint, he has alleged that actually Freedman knew that the "personal guarantee" was impermissible under federal law, and could not be legally enforced against plaintiff, that notwithstanding that fact, Freedman filed suit pursuant to the guarantee to collect from plaintiff, debts arising from Mr. McDonald's care at Meadowbrook. (AC ¶19, 20). The facts alleged by plaintiff in the complaint are to be accepted as true. Roots Partnership v. Lands' End, Inc., 965 F.2d 1411, 1416 (7th Cir. 1992).

If the defendant wishes to argue that it had no knowledge that the "personal guarantee" was improper and unenforceable, that is an issue to be addressed after discovery, once the parties can explore what information was provided to Freedman by Meadowbrook, the extent of the knowledge of Freedman, and what instructions Meadowbrook gave to Freedman with respect to filing suit on these "personal guarantees." This argument, set forth by Freedman, involving reliance and its actual knowledge attempt to dispute the facts considered to be true for the purposes of a motion pursuant to FED. R. CIV. P. 12(b)(6).

In a continuation of its attempts to shirk the appropriate standard of review under FED. R. CIV. P. 12(b)(6), Freedman proceeds to argue that "plaintiffs fail to plead facts to establish that Freedman *knew* that the personal guarantee was invalid." (Freedman mot. p. 3). Plaintiff alleged that Freedman had said knowledge. (AC ¶19, 20). State of mind may be alleged generally, FED. R. CIV. P. 9, and here plaintiff has alleged how Freedman acquired knowledge. Freedman also claims that it could not have known the circumstances under which it was signed, yet plaintiff alleged that it was required as a condition of admission, and that it was a part of a standard form document, of which Freedman was aware. (AC ¶¶ 8,9, 19, 20).

It is well established that under the liberal notice-pleading standard of the Federal Rules of Civil Procedure, plaintiff need not plead all of the facts necessary to support his claim. Walker, 288 F.3d at 1007. Plaintiffs do not have to, and should not, plead every fact that supports their claim and that they will ultimately prove: "a plaintiff in a suit in federal court need not plead facts, he can plead conclusions." Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995). Accordingly, defendant's motion to dismiss should be denied.

## IV. PLAINTIFF CANNOT BE HELD LIABLE PURSUANT TO THE PERSONAL GUARANTEE

Freedman argues that plaintiff mischaracterizes 42 U.S.C. §1396 in that it does not make the third-party personal guarantee "illegal per se and void under federal law." It is Freedman who mischaracterizes plaintiff's allegations. Plaintiff does not assert that the personal guarantee is "illegal per se and void," nor is this necessary for plaintiff to prevail on his FDCPA claims.

Plaintiff correctly states the provisions of 42 U.S.C. §1396r(5)(A)(ii), which prohibit a nursing home facility from requiring a third-party guarantee as a condition of admission, if it receives of federal Medicaid funds. Yet, Meadowbrook required the signing of a personal guarantee as a part of its standard form admission contract, despite the fact that it receives federal funding. (AC ¶ 8, 9). As such, the personal guarantee is unenforceable as to plaintiff. Meadowbrook is seeking to have the best of both worlds - receipt of Medicaid funds, and the ability to obtain a guarantee of payment from a third-party. This, obviously, is improper. Plaintiff has alleged that Freedman has become a willing participant of this impropriety, by continually filing suit pursuant to personal guarantees, despite knowing that Meadowbrook is not a facility that can require them, much less enforce them. (AC ¶¶ 19, 20).

Freedman's actions clearly violate the FDCPA. By seeking payment, and filing suit against a person from whom it knows the debt is unenforceable, it gives the false impression of the legal status of the debt, threatens action that cannot be legally taken, represents that it has the right to obtain a wage garnishment, and is generally false, deceptive, and unfair. 15 U.S.C. §§1692e, (2)(A), (5), (10), and 1692f.

## V. CONCLUSION

For the reasons stated above, Freedman's motion to dismiss should be denied.

Respectfully submitted,

Michelle R. Teggelaar

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle R. Teggelaar
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

# SEE CASE FILE FOR EXHIBITS