## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID P. CARROLL, )
          Plaintiff, )
          v. ) No. 02 C 4903
) Judge Marovich
BUTTERFIELD HEALTH CARE, INC., ) Magistrate Judge Bobrick
doing business as MEADOWBROOK )
MANOR BOLINGBROOK; )
KIANOOSH JAFARI; )
FREEDMAN, ANSELMO, LINDBERG & )
RAPPE, )
)
          Defendants. )

**FILED**
DEC 18 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED DEC 19 2002

### NOTICE OF FILING

TO:   Sharon A. Doherty                Jeffrey T. Mitchell
      SCHIFF, HARDIN & WAITE       KONICEK & DILLON, PC
      6600 Sears Tower                 112 N. First Ave., Suite 401
      Chicago, IL 60606-6473         St. Charles, IL 60174

        **PLEASE TAKE NOTICE** that on December 18, 2002, we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS II AND IV OF PLAINTIFF'S AMENDED COMPLAINT**, a copy of which being attached hereto and served upon you.

                                                                                     Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle R. Teggelaar
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

j:\case\meadow8.383\pleading\notfil21802.wpd



## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on December 18, 2002, a copy of the above referenced document was served by United States Mail on the parties listed above.

_____
Daniel A. Edelman

j:\case\meadow8.383\pleading\notfil21802.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID P. CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 4903 |
| | ) | Judge Marovich |
| BUTTERFIELD HEALTH CARE, INC., | ) | Magistrate Judge Bobrick |
| doing business as MEADOWBROOK | ) | |
| MANOR BOLINGBROOK; | ) | **FILED** |
| KIANOOSH JAFARI; | ) | |
| FREEDMAN, ANSELMO, LINDBERG & | ) | DEC 1 8 2002 |
| RAPPE, | ) | |
| | ) | MICHAEL W. DOBBINS |
| Defendants. | ) | CLERK, U.S. DISTRICT COURT |

DOCKETED DEC 19 2002

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
COUNTS II AND IV OF PLAINTIFF'S AMENDED COMPLAINT**

Defendants, Butterfield Healthcare, Inc. d/b/a Meadowbrook Manor Bolingbrook ("Meadowbrook") and Kianoosh Jafari ("Jafari") (collectively "defendants"), have moved to dismiss plaintiff's Amended Complaint, pursuant to FED. R. CIV. P. 12(b)(6). Specifically, Meadowbrook and Jafari assert (i) that plaintiff cannot assert a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/2 *et seq.* ("CFA") where there is no federal private right of action, (ii) plaintiff's equitable claim under Count IV of the Amended Complaint is moot, and (iii) in the event that the Court grants the motion of Freedman, Anselmo, Lindberg & Rappe to dismiss Count I of the Amended Complaint, that the Court should decline to exercise supplemental jurisdiction over Counts II and IV. Meadowbrook and Jafari's arguments are wholly without merit, and as discussed below, their motion to dismiss should be denied.



I.  **FACTUAL BACKGROUND**

Plaintiff David P. Carroll is an individual and the son-in-law of one James R. McDonald. On or about December 9, 2000, James R. McDonald was admitted to Meadowbrook Manor Bolingbrook. ("Meadowbrook"). (Amended Complaint ["AC"] ¶¶ 3, 7).

Defendant Butterfield Health Care, Inc., doing business as Meadowbrook Manor Bolingbrook, is an Illinois corporation which operates a nursing home located at 431 W. Remington Blvd., Bolingbrook, Illinois. (AC ¶ 4)

Defendant Jafari is the principal executive officer of Butterfield Health Care, Inc., and the principal equity owner of several other corporations which operate nursing homes. The latter are (a) Butterfield Health Care II, Inc. d/b/a Meadowbrook Manor of Naperville, (b) Butterfield Health Care III, Inc. d/b/a Meadowbrook Manor of Geneva, (c) Butterfield Health Care IV, LLC, (d) Butterfield Health Care V d/b/a Riverwoods Assisted Living Community, and (e) Butterfield Health Care VI, LLC d/b/a The Arbors Supportive Living Facility. (AC ¶ 5).

Defendant Freedman, Anselmo, Lindberg & Rappe is a law firm organized as a partnership with offices at P.O. Box 3107, Naperville, Illinois, 60566. (AC ¶ 6).

At the time of Mr. McDonald's admission to Meadowbrook, plaintiff Carroll was informed that McDonald could not be admitted unless Carroll executed a "Personal Guarantee." The "Personal Guarantee" is on p. 12 of the contract between Meadowbrook Manor and McDonald, attached as <u>Exhibit A</u> hereto. <u>Exhibit A</u> is prepared on a standard printed form contract that has been used since 1994. (AC ¶ 8).

Under 42 U.S.C. §1396r(5)(A)(ii), a state must prohibit a nursing home facility receiving Medicare or Medicaid, from requiring a third party guarantee of payment to the facility

as a condition of admission to, or continued stay in, the facilities. Section 1396r provides:

> **(5) Admissions policy**
>
> **(A) Admission**
>
> **With respect to admissions practices, a nursing facility must—**
> ...
>
> **(ii) not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility; . . .**

(AC ¶ 10).

It was and is the policy and practice of Meadowbrook other nursing homes operated by defendant Jafari to require a third party guarantee of payment as a condition of admission to, or continued stay in, the facilities, despite being the recipient of federal funding in the form of Medicare or Medicaid. (AC ¶ 11).

Defendant Jafari authorized and approved of the practice of requiring a third party guarantee of payment as a condition of admission to, or continued stay in, the facilities. (AC ¶ 12).

Defendant Freedman filed suit on behalf of Meadowbrook and against Carroll on the "Personal Guarantee" on or about August 2, 2001. On Sept. 6, 2001, defendant Freedman obtained a judgment in favor of Meadowbrook and against plaintiff Carroll. Defendants Meadowbrook and Freedman garnished plaintiff's wages. (AC ¶¶ 14, 15).

On May 17, 2002, the judgment was vacated on plaintiff Carroll's motion, which argued, among other things that the "Personal Guarantee" pursuant to which the judgment was obtained was in violation of federal law. (Motion and Agreed Court Order attached as <u>Exhibit</u>

B). Defendant Freedman, on behalf of defendant Meadowbrook Manor Bolingbrook, continued garnishing plaintiff's wages after the judgment was vacated. (AC ¶¶16, 17).

Defendant Freedman regularly files suit on behalf of defendant Meadowbrook and other nursing homes owned by defendant Jafari to enforce personal guarantees. A computer search of court records reveals more than 50 such cases in 1999-2002. (AC ¶ 18).

Defendant Freedman Anselmo Lindberg & Rappe were on notice that the "Personal Guarantees"that they sought to enforce against family members of persons admitted to Meadowbrook and other nursing homes owned by defendant Jafari were improper and in violation of federal law as early as 2000, as the same defenses raised by Mr. Carroll in his motion to vacate, Exhibit B, were raised in one or more earlier suits filed by defendant Freedman on behalf of Meadowbrook and Jafari's nursing homes. In those actions, defendant Freedman likewise agreed to have the judgments vacated, once these defenses were waived. (AC ¶ 19).

Notwithstanding this knowledge of the improper "Personal Guarantees," and Meadowbrook's receipt of federal funding obtained through these earlier proceedings, defendant Freedman continued to file suits to collect debts owed to Meadowbrook and Jafari from residents' family members pursuant to these instruments. (AC ¶ 20).

## II.  MOTION TO DISMISS STANDARD

A complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002), the Supreme Court reemphasized the extremely liberal pleading standard of the Federal Rules of

Civil Procedure, noting that a dismissal of claims is only appropriate in the rarest circumstances:

> Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' [citing Hishon v. King & Spalding 467 U.S. 69, 73 (1984)]. If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.

See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169 (1993). A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).[1] The question is not what facts have or have not been alleged, but whether a plaintiff can submit proof to support the claim:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Scheuer, 416 U.S. at 236. In Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002), Judge Posner reiterated the broad notice pleading standard of the federal rules:

> As the Supreme Court has recently reaffirmed [citing Swierkiewicz], and we have held time and again [citations omitted], there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions [ ] listed in Rule 9.

The Court must accept all well-pleaded allegations of the complaint as true, and any ambiguities or doubts concerning sufficiency of the claim must be resolved in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

---

[1] Overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The plaintiff, but not the defendant, is entitled to set forth what set of facts consistent with the allegations of the complaint would sustain a claim. Early v. Bankers Life & Cas. Co., 959 F.2d 75, 79 (7th Cir. 1992). See also Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992). "This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion . . . ." Cushing v. City of Chicago, 3 F.3d 1156, 1160 (7th Cir. 1993).

### III. PLAINTIFF MAY ASSERT AN INDEPENDENT CLAIM UNDER THE CFA

Defendants argue that plaintiff may not assert a claim under the CFA where a federal statute, which plaintiff claims to have been violated, does not provide for a private right of action. This, however, is simply untrue.

Defendants rely almost entirely upon a 1987 decision of the Appellate Court of Illinois, Mid-America National Bank of Chicago v. First Savings and Loan Assoc. of South Holland, 161 Ill. App. 3d 531, 515 N.E.2d 176 (1987), for their bald assertion that "no action under the Illinois Consumer Fraud Act, nor any common law claim" can be asserted where a federal statute creating a standard of conduct does not provide for a private right of action. (Defendants' Memorandum ["Def. Mem."] p. 3. This completely misrepresents the holding of that case.

In Mid-America, a mortgage borrowers attempted to assert claims against mortgage lenders for damages they suffered allegedly from the defendants' failure to require the borrowers to purchase flood insurance in an amount equal to the outstanding balances of the mortgages, and failure to advise them that the properties at issue were located in flood zones.

The Flood Act, 42 U.S.C. §4012a(b), directs federally insured lenders to provide

6

loans secured by improved real estate in flood zones only if the property is covered by flood insurance in an amount equal to the outstanding principal balance of the mortgage loan, and 42 U.S.C. §4104a requires lenders to condition the making of the loan on the notification of flood hazards, in writing, within a reasonable period in advance of the signing of the purchase agreement.

Plaintiffs brought claims for negligent misrepresentation and for violations of the CFA, arising from the alleged failure of the defendants to meet the requirements of the Flood Act.

The court did <u>not</u> hold that a lack of a private right of action under the federal statute barred any CFA and common law claims, but instead stated that "whether or not a Federal statute establishes the appropriate standard of conduct for a state common law cause of action is a matter of state law. . . . We believe that the determination of whether the requirements of a Federal statute may provide the basis for a duty which, if breached, would give rise to a state common law cause of action must necessarily depend upon the intent of the legislature which enacted the statute." *Id.*

In its examination of the Flood Act, the <u>Mid-America</u> court determined that the "plain language of the [Flood] Act evinces a greater concern for lenders than for borrowers. [Citations omitted] The act itself does not grant any direct benefit to borrowers, nor does it directly impose any obligations upon lenders. . . . Clearly the purpose of enacting the Flood Act was not to benefit borrowers at the expense of lenders by allowing a borrower to sue a federally insured lender for negligent misrepresentation when the ultimate liability would rest upon the Federal treasury." *Id.* at 179-180. Under this analysis, the court concluded that where the intent

of the act was not to protect the borrowers, it did not create a duty which if breached would provide a common law cause of action in the State of Illinois.

In applying its analysis to the plaintiffs' CFA claim, the court again looked to the purpose and language of the Flood Act, and found that the "legislative history and plain language of the Flood Act militate against a conclusion that violation of the Act's requirements provide a basis for a cause of action under the Consumer Fraud Act." *Id.* at 540. The court also held that the plaintiffs in that action failed to allege the necessary elements to state a claim under the CFA. The court simply did not hold that the lack of a private right of action under the Flood Act was the factor which precluded the plaintiffs' claim. This conclusion was based upon the *purpose* of the statute allegedly violated, which did not provide the plaintiffs to that action with a federal right, or an enforceable right under state law.

In this case, the opposite is true. The Medicaid Act, 42 U.S.C §1396 and specifically the Nursing Home Reform Act, 42 U.S.C. §1396r were intended to protect Medicaid recipients, the mentally disabled, and the vulnerable elderly. *See e.g.* Concourse Rehabilitation & Nursing Center, Inc. v. Whalen, 249 F.3d 136, 144 (2d Cir. 2001) (Holding that healthcare providers cannot bring a §1983 claim under the Medicaid Act, as it was intended to benefit Medicaid beneficiaries, not providers). *See also* Brogdon v. National Healthcare Corp, 103 F. Supp.2d 1332 (N.D. Ga. 2000) (Recognizing that although there is no private right of action, violations of the Medicaid Act may provide basis of §1983 claim); Tinder v. Lewis County Nursing Home District, 207 F. Supp.2d 951 (E.D. Mo. 2001) (same); Rolland v. Cellucci, 198 F. Supp.2d 25, 30 (§1983 provides an independent avenue for private enforcement of federal law such as the NHRA). Chambers v. Osteonics Corp., 109 F.3d 1243 (7th Cir. 1997) (Violation of

8

FDA procedures can support common law negligence claim where elements of negligence claim did not exceed duties imposed by the federal statute).

The plaintiff, as a family member of one of the "vulnerable elderly," is within the group of persons the Act was designed to protect. Under the analysis in Mid-America, as the intent of the legislature was to provide protection to persons such as plaintiff (otherwise there would be no purpose for §1396r(5)(A)(ii)), and sets the standard of conduct which if violated can be redressed by a private action under the laws of the state of Illinois.

### IV. PLAINTIFF HAS ADEQUATELY PLEADED A CLAIM UNDER THE CFA

Also in reliance upon Mid-America, defendants assert that plaintiff has inadequately alleged the necessary elements of a claim under the CFA, as it "cannot be said that the alleged practice 'offends public policy,'" that plaintiff failed to allege that the practice is "immoral and oppressive" and that plaintiff "cannot allege that the alleged practice causes substantial injury to consumers." (Def. Mem. pp. 4-5).

This argument not only again misrepresents the holding of Mid-America, but further mistakenly relies upon that 1987 as setting the current pleading standard for a claim under the CFA. As discussed above, in Mid-America, the federal law allegedly violated was not intended to protect consumers and did not provide them with a defensible right. Here, the federal statute was intended to protect persons such as plaintiff from the *exact* incidents complained of in this suit, namely from being required to sign a personal guarantee as a condition of his father-in-law's admission to Meadowbrook. Meadowbrook's practice of requiring these guarantees is in direct contravention of that public policy intended to protect plaintiff. (AC ¶¶ 8, 10, 11, 12). Furthermore, it is preposterous for defendants to claim that plaintiff cannot allege that this

9

practice, where plaintiff has clearly alleged that it does, and that he has himself been injured by being subjected to a judgment and wage assignment as a result of the personal guarantee complained of in this action.

Notwithstanding the above, the pleading requirements under the CFA are not as defendants represent, plaintiff is not required to set forth that the alleged practice is "immoral or oppressive" (although it certainly is). For a deception claim, the plaintiff must allege "(1) [A] deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." Robinson v. Toyota Motor Credit Corp., 266 Ill. Dec. 879, 888, 775 N.E.2d 951, 960 (Ill. May 23, 2002). Furthermore, "[r]ecovery may be had for unfair as well as deceptive conduct." *Id.*, *citing* Saunders v. Michigan Avenue Nat'l Bank, 278 Ill. App.3d 307, 313, 662 N.E.2d 602 (1996).

When looking to determine if a practice is unfair, under the CFA consideration is given to the Federal Trade Commission factors listed by the defendants: (1) whether the practices offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Id.* at 961. As discussed above, plaintiff has alleged that defendants have preyed upon the relatives of elderly persons, such as plaintiff, by requiring them to sign personal guarantees, when said guarantees may not be required by a facility, like Meadowbrook, which is a participant under the Medicaid Act.

Despite the fact that plaintiff's claim clearly meets all three of the FTC requirements, the Illinois Court has stated that "all three criteria . . do not need to be satisfied to support a finding of unfairness . . . . "A practice may be unfair because of the degree to which it

meets one of the criteria or because to a lesser extent it meets all three.'" Robinson, 775 N.E.2d at 961, *quoting* Cheshire Mortgage Services, Inc. v. Montes, 612 A.2d 1130, 1143-4 (Conn. 1992). Under this standard, as set forth above, the Amended Complaint adequately pleads a claim for the violation of the CFA.

Other jurisdictions have recognized the unfair and deceptive nature of requiring a personal guarantee in opposition to the NHRA provisions. In Podolsky v. First Healthcare Corp., 50 Cal. App.4th 632, 58 Cal. Rptr.2d 89 (1996) (Exhibit A), the court held that the plaintiffs adequately plead a claim under the California Unfair Competition Act ("UCA") where family members of private-pay nursing home residents, who are still entitled *not* to be obligated to sign a personal guarantee, were nonetheless misled into believing that their signatures were required upon a document purportedly giving a voluntary waiver of the right not to be so bound,[2] particularly where the family members of those persons being placed in the facility may be experiencing a "period of personal turmoil trying to find a suitable facility to care for an elderly parent..." *Id.* at 651, 652. *See also* Slovik v. Prime Healthcare Corp., — So. 2d — 2002 WL 1350448 (Ala. App. 2002); Manor of Lake City, Inc. v. Hinners, 548 N.W.2d 573, 577 (Iowa 1996). *Cf.* Brogdon v. National Healthcare Corp., 103 F. Supp.2d 1322 (N.D. Ga. 2000) (plaintiff could not bring action under Georgia Fair Business Practice Act for inadequate care allegedly received at nursing home facility where FBPA has restricted application and only applies to the unregulated consumer marketplace).

---

[2] California law, unlike Illinois law requires an affirmative disclosure and disclaimer on personal guarantee forms for private pay residents which provides that they are not obligated to sign the document but may do so voluntarily.

11

## V. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION

Defendants request that if the Court should be inclined to grant the motion of defendant Freedman, Anselmo, Lindberg & Rappe to dismiss Count I, that the Court should decline to exercise supplemental jurisdiction over Counts II and IV asserted against Meadowbrook and Jafari. According to defendants, these counts are "not so related" to Count III, another count brought under federal question jurisdiction, which the Freedman defendant has answered.

This is simply untrue. Count III and all counts of the Amended Complaint arise from the same nucleus of operative fact - namely that Meadowbrook and Jafari improperly and unfairly required plaintiff and the members of the putative class to sign a personal guarantee as a condition of an elderly relative's admission to the nursing facility. Meadowbrook and Jafari subsequently intended to enforce these illegal guarantees and referred them to collection to obtain amounts from plaintiff which he did not owe.

Count III complains that Freedman collected, on Meadowbrook and Jafari's behalf, pursuant to the personal guarantee, funds which plaintiff did not legally owe, even after the judgment was vacated. Presumably, these amounts collected - and not refunded to plaintiff - ended up, at least in part, in the hands of Meadowbrook and Jafari.

All of the actions complained of in the Amended Complaint arose from the same common nucleus of operative fact - the requirement of the personal guarantee, and Meadowbrook and Jafari's subsequent desire to use it to obtain funds from plaintiff. It would be impossible to proceed with Count III without joining Meadowbrook and Jafari, as their conduct in the retention of Freedman, and receipt of amounts collected will be at issue in addressing this count.

12

Accordingly, the Court should exercise supplemental jurisdiction over Counts II and IV, pursuant to 28 U.S.C. §1367, even if it grants Freedman's motion.

## VI. DEFENDANTS CANNOT MOOT COUNT IV

Lastly, defendants claim that Count IV, seeking a cancellation of the personal guarantee, is moot as defendants claim that it will not be enforced against plaintiff and waive their right to do so. This presumably is the case because, as defendants represent on the footnote to page 7 of their brief, that "since the time the underlying action was filed" Meadowbrook learned that Mr. McDonald had supplemental insurance from Blue Cross/Blue Shield.

Despite the fact that this information goes beyond the scope of the complaint, and is improper, plaintiff must address it here as it contains misrepresentations of fact. Meadowbrook was aware at all times that Mr. McDonald had coverage from Blue Cross. Meadowbrook originally submitted the claim to Blue Cross, but it was denied because Meadowbrook submitted the claim improperly. Plaintiff repeatedly advised Meadowbrook after communications with Blue Cross to simply resubmit the claim with the appropriate and correct information, and that it would accordingly be paid. Blue Cross itself advised Meadowbrook of this fact on January 29, 2002. (AC, Exhibit B, ¶2f). Instead of doing so, Meadowbrook must have considered it simpler to obtain a judgment against Mr. Carroll, pursuant to the improper personal guarantee, than resubmit the claim. Before this action was filed, Meadowbrook no effort to resubmit the claim to Blue Cross despite its sudden willingness to do so at this juncture.

Notwithstanding the above, defendants cannot simply moot plaintiff's claim where he has the threat of continued injury from the personal guarantee and has *already suffered* significant damages from the personal guarantee. Defendants purported "waiver" of its "right" to

13

enforce the invalid document cannot undo its previous actions and the grievous harm caused to plaintiff which resulted from that course of conduct. Only the cancellation of the guarantee can make plaintiff whole. "[V]oluntary cessation of the allegedly illegal conduct does not deprive the tribunal of the power to hear and determine the case, i.e. does not make the case moot." United States v. W.T. Grant, Co., 345 U.S. 629, 632 (1953). Defendants cannot show that there is no possibility of repetition, and cannot undue the harm it has already caused to plaintiff which only the cancellation can provide. All defendants have shown is that they *now* will again submit the claim to Blue Cross. Perhaps if Meadowbrook again makes an inadequate claim submission, plaintiff may again appear in its eyes as a fine target as a source of money which he does not owe. The claim is not moot, and defendants' motion should be denied.

## VI. CONCLUSION

For the above stated reasons, defendants' motion to dismiss should be denied.

Respectfully submitted,

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle R. Teggelaar
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

# SEE CASE FILE FOR EXHIBITS