# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4903 | **DATE** | 10/28/2003 |
| **CASE TITLE** | Carroll vs. Butterfield Health Care, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12/22/03 at 11:00AM.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Freedman's motion to dismiss Count I is denied and Count II and Count IV of Jafari, Meadowbrook and Freedman's motions to dismiss are granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | OCT 29 2003 date docketed | |
| | Notified counsel by telephone. | | | 31 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | JD | courtroom deputy's initials | 03 OCT 28 PM 3:25 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

| | | |
|---|---|---|
| DAVID P. CARROLL | ) | **DOCKETED** |
| Plaintiff, | ) 02 C 4903 | OCT 2 9 2003 |
| v. | ) | |
| | ) Judge George M. Marovich | |
| BUTTERFIELD HEALTH CARE, INC., d/b/a MEADOWBROOK MANOR BOLINGBROOK; KIANOOSH JAFARI; and FRIEDMAN, ANSELMO, LINDBERG & RAPPE, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, David P. Carroll ("Carroll") filed a lawsuit against Butterfield Health Care, Inc. doing business as Meadowbrook Manor Bolingbrook ("Meadowbrook"), Kianoosh Jafari ("Jafari"); and Freedman, Anselmo, Lindberg & Rappe ("Freedman"). Carroll filed a four-count complaint alleging, inter alia, violations of the Fair Debt Collection Practices Act ("FDCPA") against Freedman and violations of the Illinois Consumer Fraud Act against Meadowbrook and Jafari. Freedman now moves to dismiss Count I and IV of Meadowbrook's complaint. Jafari and Meadowbrook now move to dismiss Count II of Meadowbrook's complaint pursuant to Fed R. Civ. P. 12(b)(6). For the reasons set forth below, the motions are granted in part and denied in part.

31

BACKGROUND

The Complaint alleges the following relevant facts which, for purposes of deciding this motion, are taken as true. <u>Hishon v. Kemp & Spalding</u>, 467 U.S. 69, 73 (1984). On December 9, 2000, James R. McDonald ("McDonald") was admitted to Meadowbrook's nursing home in Bolingbrook, Illinois. At the time McDonald was admitted, Carroll, his son-in-law, was accompanying him and was told by Meadowbrook that McDonald could not be admitted unless Carroll signed a personal guarantee of payment. The guarantee held Carroll liable in the event McDonald did not pay Meadowbrook their pre-arranged fees.

On August 2, 2001, Freedman filed a suit on behalf of Meadowbrook against Carroll to fulfill the terms of the guarantee. Freedman has filed over 50 lawsuits on behalf of Meadowbrook collecting fees owed to Meadowbrook when parties have defaulted on personal guarantees. In several of these lawsuits, defendants have succeeded by claiming the personal guarantee violates the Medicaid Act, 42 U.S.C. 1396r(c)(5)(A)(ii) ("Medicaid Act").

On September 6, 2001, Freedman obtained a judgment in favor of Meadowbrook to enforce the agreement. Subsequently, Meadowbrook and Freedman garnished Carroll's wages. However, on May 17, 2002, the judgment was vacated. Freedman continued to garnish Carroll's wages and in response Carroll has filed this

2

lawsuit.

## DISCUSSION

I.  Standard for a Motion to Dismiss

When considering a motion to dismiss, a court must view the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts in the complaint must be accepted as true. Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994). Rule 8(a) of the Federal Rules of Civil Procedure states that a complaint must identify the basis of jurisdiction and contain "a short and plain statement of the claim showing that the pleader is entitled to relief". Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). Dismissal is proper only if it appears beyond a doubt that plaintiff can prove no set of facts in support of a claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiff is not, however, entitled to allege mere legal conclusions. Kunick v. Racine County, 946 F.2d 1574, 1579 (7th Cir. 1991). To withstand a motion to dismiss, a complaint must allege facts which sufficiently set forth the essential elements of the cause of action. Gray v. County of Dane, 854 F.2d 179, 182 (7th Cir. 1988). However, the complaint does not need to contain all of the facts that will be necessary to prevail. Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003). With these principles in mind, we turn to the motion presently before the

court.

I.  Violation of the Fair Debt Collection Practices Act

In Count I, Carroll alleges that the personal guarantee Meadowbrook required Carroll to sign was in violation of the Medicaid Act. Carroll further alleges that Freedman violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692, ("FDCPA") by trying to collect on the personal guarantees on behalf of Meadowbrook, which were in violation of the Medicaid Act.

A.  The Medicaid Act

This Court must address a threshold issue of whether requiring a personal guarantee as a condition for admission to the nursing facility violates Congress's intent for the Medicaid Act. The statute states, in pertinent part, "with respect to admissions practices, a nursing facility must . . . (ii) not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility." 42 U.S.C. 1396r(c)(5)(A)(ii).

The statue plainly states that conditioning such an admission to a nursing facility is a violation of the statute. Id. See also Manor of Lake City, Inc. v. Hinners, 548 N.W.2d 573, 575-76 (Iowa 1996); Podolsky v. First Healthcare Corp, 50 Cal.App.4th 632, 644-46 (Cal. App. 2nd. Dist. 1996). Jafari and Meadowbrook clearly violated the statute by requiring Carroll to sign a personal guarantee that Carroll would

fulfill all the covenants and agreements for the maintenance of McDonald at Meadowbrook's facility.

B.  Fair Debt Collection Practices Act

The next issue the Court must resolve is whether the Medicaid Act violation can form the basis of an FDCPA claim against Freedman. A lawyer collecting a debt on behalf of a client is considered a debt collector. Heintz v. Jenkins, 514 U.S. 291, 294 (1995). The FDCPA does not hold attorney's collecting debts to a different standard than other debt collectors. Jenkins v. Heintz, 124 F. 3d 824, 833 (7th Cir. 1997). Nor does the FDCPA say that a "collector's status as an attorney should add a requirement of independent legal analysis for each aspect of the creditor's claim." Id. "To require an attorney debt collector to conduct an independent investigation into the legal intricacies of the client's contract with the consumer would create a double standard . . . based upon the identity of the collector." Id. at 834. Treating lawyers and debt collectors equally under the FDCPA is in line with both Congress's and the Supreme Court's interpretation of that Act. Id.

Based upon the both the Supreme Court and Seventh Circuit's rulings, Freedman did not have a duty to investigate the validity of the collection claim placed against Carroll. However, Carroll states in his complaint that Freedman had knowledge that the

5

personal guarantee required by Meadowbrook was in violation of the Medicaid Act. In previous lawsuits filed by Freedman, on behalf of Meadowbrook, several defendants have raised the defense that the personal guarantee violates the Medicaid Act and had their lawsuits dismissed. Based upon these prior lawsuits, Freedman had knowledge that conditioning admission to Meadowbrook's facility was in violation of the Medicaid Act. Therefore, Freedman violated the FDCPA by attempting to collect on an illegal guarantee. The Court must deny the motion to dismiss Count I.

II. <u>Illinois Consumer Fraud Act Claim</u>

Carroll alleges in Count II of his complaint that Jafari and Meadowbrook violated Section 2 of the Illinois Consumer Fraud Act ("CFA") 815 Ill. Comp. Stat. 505/2. Carroll alleges that by requiring a personal guarantee from relatives of nursing home residents and enforcing the guarantees, Jafari and Meadowbrook violated the public policy of Section 2 of the CFA, inflicted substantial injury on the guarantor in the course of trade or commerce and were deceptive.

Section 2 of the CFA describes, in pertinent part, unfair or deceptive acts as:

> "including but not limited to the use
> or employment of any deception, fraud,
> false pretense, false promise,

>misrepresentation or the concealment,
>suppression or omission of any material
>fact, with intent that others rely upon
>the concealment, suppression or omission
>of such material fact in the conduct
>of any trade or commerce."

Robinson v. Toyota Motor Credit Corporation, 775 N.E.2d 951, 960 (Ill. 2002)(quoting 815 Ill. Comp. Stat. 505/2). The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. Id.

Moreover, the CFA requires this Court give consideration to the factors set forth by the Federal Trade Commission to determine whether Jafari and Meadowbrook's alleged violation of the Medicaid Act states a cause of action under the CFA. Id. at 961. Those factors are: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers. Federal Trade Comm'n v. Sperry & Hutchinson Co., 405 U.S. 233, 244 n.5 (1972). Specifically, the Illinois Supreme Court has also stated that "defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it and injure the

7

consumer." Robinson, at 961.

First, the Medicaid Act does not provide for a private right of action. Brogdon v. National Healthcare Corp., 103 F. Supp. 2d 1322, 1330-31 (N.D. Ga. 2000). Both the legislative history of the Medicaid Act and the Medicaid Act itself do not support the conclusion that a private cause of action exists. However, the Medicaid Act does provide that a State may enforce a violation of the Medicaid Act. 42 U.S.C. 1396r(h). Therefore, since the Medicaid Act does not provide a private right of action and because Congress did not create a standard of conduct, which if breached gave rise to any private claim, the Court finds that Jafari and Meadowbrook's conduct does not offend public policy. Further, Count II of Carroll's Amended Complaint is devoid of any allegation that defendant Jafari and Meadowbrook's actions were immoral, unethical, oppressive or unscrupulous.

Finally, the injury to the plaintiff was not substantial. Carroll has not alleged in his Complaint that he was coerced into admitting his father-in-law into Meadowbrook's facility. Nor does he allege that he had no alternate choices in what facility to enroll his father-in-law into. Absent this showing, there can be no substantial injury to Carroll. See Robinson, at 962.

Since Jafari and Meadowbrook's conduct has not satisfied any of the requirements under the Sperry test, Count II of Carroll's Complaint is dismissed.

III. Equitable Relief Claim

Count IV of Plaintiff's amended complaint requests cancellation of the personal guarantees Jafari and Meadowbrook have against Carroll. Jafari and Meadowbrook claim Count IV is moot because they have cancelled the personal guarantee and have restructured their admission policy to not condition admission upon a third party guarantee.

The Supreme Court has stated that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). It is the duty of the courts to be cautious when a defendant has claimed they have reformed the alleged wrong. Id. However, the case may be moot if the defendant can show that there is no probability of resuming the illegal activity. Id. at 633. This is a heavy burden for defendant to prove and a mere profession that defendant has discontinued his practice and has no intention to revive it does not suffice. Id.

Jafari and Meadowbrook have met this heavy burden. They have stipulated that they will not continue to seek payment in conjunction with the personal guarantee signed by Carroll. Jafari and Meadowbrook have also guaranteed in a judicial filing that they will not seek enforcement of the personal guarantee. (Defs'. Memo. Supp. Mot. Dismiss at 7). Thus, the claim in Count

IV has been rendered moot. See <u>Stokes v. Village of Wurtsboro</u>, 818 F.2d 4, 5 (2nd Cir. 1987). Accordingly, Count IV is dismissed.

## Conclusion

For the reasons set forth above, Freedman's motion to dismiss Count I is denied and Count II and Count IV of Jafari, Meadowbrook and Freedman's motions to dismiss are granted.

ENTER:

George M. Marovich
United States District Judge

DATED: Oct. 28, 2003